**Larry POSTON, Plaintiff,**

v.

**RELIABLE DRUG STORES,
INC., Defendant.**

**No. IP 91–1160–C.**

United States District Court,
S.D. Indiana,
Indianapolis Division.

Feb. 19, 1992.

David A. Shaheed, Watkins & Lee, Indianapolis, Ind., for plaintiff.

Susan B. Tabler, Ice Miller Donadio & Ryan, Indianapolis, Ind., for defendant.

## ENTRY

DILLIN, District Judge.

This matter comes before the Court on the motion of the defendant, Reliable Drug Stores, Inc., for partial dismissal and to strike the plaintiff's jury demand. For the following reasons, the Court grants in part and denies in part the defendant's motion.

### Background

The plaintiff, Larry Poston, an African-American male and a Muslim, was an employee of the defendant, Reliable Drug Stores, Inc., (Reliable) until his termination on July 9, 1990. Mr. Poston claims that Reliable discriminated against him on account of his race and religious beliefs. Mr. Poston brings this suit under Title VII of the Civil Rights Act of 1964, 42 U.S.C. 2000e *et seq.* (Title VII), and under 42 U.S.C. § 1981 (Section 1981), which dates back to the Civil Rights Act of 1866.

Mr. Poston's specific claims are as follows. First, he claims that Reliable discriminated against him by failing to accommodate his religious beliefs in the Spring of 1990, when Reliable refused to arrange his work schedule so that he could attend a weekly Muslim prayer service, held on Friday afternoons. Second, Mr. Poston claims that in January, 1990, he was subjected to harassment at work. Third, Mr. Poston claims that his termination in July, 1990, was racially (and perhaps also religiously) motivated. Finally, Mr. Poston claims that Reliable discriminated against him in refusing to rehire him after he made Reliable aware that his termination was unjustified. Mr. Poston has requested a jury trial on Count II of his amended complaint in which he alleges discriminatory termination and failure to rehire.

Having exhausted his administrative remedies with the Equal Employment Opportunity Commission (EEOC) and having received his right to sue letter on July 22,

1991, Mr. Poston initiated the present suit on October 18, 1991, by filing his complaint in this Court. Thereafter, on December 9, 1991, Mr. Poston filed his amended complaint.

Reliable has moved, pursuant to Federal Rule of Civil Procedure 12(b)(6), to dismiss the Section 1981 claim in the amended complaint for failure to state a claim upon which relief can be granted. Reliable claims that at all times relevant to this suit, including the beginning and end of Mr. Poston's employment with Reliable and the filing of this lawsuit, Section 1981 did not afford relief for claims of harassment during employment or for claims of termination from employment. Reliable also asserts that Section 1981 never has encompassed claims of religious discrimination. In addition, Reliable has moved for dismissal of Mr. Poston's demand for a jury trial of his termination claim on the ground that when the events that gave rise to this suit occurred Title VII and Section 1981 did not provide a right to trial by jury.

### Discussion

In ruling on a motion to dismiss under Federal Rule of Civil Procedure 12(b)(6), the Court must accept all factual allegations in the complaint as true and must liberally construe the complaint in favor of the plaintiff. *Jenkins v. McKeithen*, 395 U.S. 411, 421–23, 89 S.Ct. 1843, 1848–50, 23 L.Ed.2d 404, 416–17 (1969). Furthermore, "[a] complaint should be dismissed for failure to state a claim only if it appears beyond doubt that the plaintiff is unable to prove any set of facts that would entitle the plaintiff to relief." *Doe ex rel. Doe v. St. Joseph's Hosp.*, 788 F.2d 411, 414 (7th Cir.1986). Only the pleadings are to be considered in resolving a 12(b)(6) motion, except that material submitted as part of the complaint may also be considered. 2A Moore's Federal Practice ¶ 12.07[2.–5], at 12–67 to 12–68 (1991); *accord Griswold v. E.F. Hutton & Co.*, 622 F.Supp. 1397 (N.D.Ill.1985). With these principles in mind, the Court turns to the issues underlying Reliable's motion to dismiss.

When this suit was initiated, and throughout Mr. Poston's employment with Reliable, Section 1981 provided in its entirety:

All persons within the jurisdiction of the United States shall have the same right in every State and Territory to make and enforce contracts, to sue, be parties, give evidence, and to the full and equal benefit of all laws and proceedings for the security of persons and property as is enjoyed by white citizens, and shall be subject to like punishment, pains, penalties, taxes, licenses, and exactions of every kind, and to no other.

42 U.S.C. § 1981 (1988). The Supreme Court has held that Section 1981 applies to private conduct. *Runyon v. McCrary*, 427 U.S. 160, 168–75, 96 S.Ct. 2586, 2593–97, 49 L.Ed.2d 415, 423–27 (1976).

■ We note at the outset that to the extent Mr. Poston seeks relief under Section 1981 for religious discrimination he is out of luck. That is because Section 1981 by its terms and as interpreted in the courts does not apply to discrimination based on religion but primarily only to discrimination based on race. *Id.* at 167, 96 S.Ct. at 2592–93, 49 L.Ed.2d at 423; *Anooya v. Hilton Hotels Corp.*, 733 F.2d 48, 50 (7th Cir.1984). Accordingly, Reliable's motion to dismiss the Section 1981 claim is granted to the extent that Mr. Poston seeks with that claim to redress religious discrimination.

We turn now to Mr. Poston's attempts to redress under Section 1981 his claims of racially motivated harassment, termination and refusal to rehire. On June 15, 1989, before any of the acts underlying these claims is alleged to have occurred, the Supreme Court decided *Patterson v. McLean Credit Union*, 491 U.S. 164, 109 S.Ct. 2363, 105 L.Ed.2d 132 (1989). In that case, the Supreme Court held that the phrase "to make and enforce contracts" does not encompass discriminatory conditions of employment, such as harassment during employment. *Id.* at 178–79, 109 S.Ct. at 2373–74, 105 L.Ed.2d at 151–52. Subsequently, lower courts, including the Seventh Circuit, have held that the logic of *Patterson* neces-

sarily also excludes discriminatory discharge claims from coverage under Section 1981. *See, e.g., McKnight v. General Motors Corp.,* 908 F.2d 104, 108–09 (7th Cir. 1990), *cert. denied,* —— U.S. ——, 111 S.Ct. 1306, 113 L.Ed.2d 241 (1991).

Because *Patterson* and its progeny were the law of the land when Reliable's misconduct is alleged to have taken place, there was at that time no remedy under Section 1981 for employment harassment or for discriminatory discharge. On November 21, 1991, however, while this case was pending, Congress effectively overruled *Patterson* with the passage of the Civil Rights Act of 1991, Pub.L. No. 102–166, 105 Stat. 1071 (1991 Act), which also amends Title VII. The 1991 Act redesignates the original Section 1981 as section 1981(a), and adds a new subsection (b), which provides:

> For purposes of this section, the term 'make and enforce contracts' includes the making, performance, modification, and termination of contracts, and the enjoyment of all benefits, privileges, terms, and conditions of the contractual relationship.

105 Stat. 1072 (to be codified at 42 U.S.C. § 1981(b)).

Mr. Poston argues that the 1991 Act should be retroactively applied to allow him to pursue his claims of harassment and termination under Section 1981. While such claims were actionable under Title VII before passage of the 1991 Act, as they still are, Section 1981 had significant advantages over the unamended Title VII. Section 1981, for example, even before the 1991 changes, afforded plaintiffs the right to a jury trial and to plenary compensatory damages as well as punitive damages under appropriate circumstances. Title VII, however, until the passage of the 1991 Act, afforded no right to a jury trial or to punitive damages and provided only for the recovery of backpay.

At the time the parties briefed the retroactivity issue, only a handful of district courts had confronted the retroactivity of the 1991 Act and it appeared that a majority rule was developing that the 1991 Act does not apply retroactively. Since then, however, more and more district courts have considered this very basic issue of statutory interpretation and the body of opinion is now more equally divided.

The reason for the lack of consensus among district courts is twofold. First, as the courts that have considered the retroactivity issue have almost universally bemoaned, Congress failed to provide in the plain language of the 1991 Act that the legislation either would or would not apply retroactively to pending cases, and the legislative history is replete with statements both for and against retroactivity. *See, e.g., Graham v. Bodine Elec. Co.,* 782 F.Supp. 74, 75–76 (N.D.Ill.1992); *Bristow v. Drake Street, Inc.,* No. 87 C 4412, 1992 WL 14262, at *1 (N.D.Ill. Jan. 21, 1991); *Guess v. City of Portage,* No. Civ.H 90–276, 1992 WL 8722, at *1–*4 (N.D.Ind. Jan. 14, 1992); *Van Meter v. Barr,* 778 F.Supp. 83, 85 (D.D.C.1991); *King v. Shelby Medical Center,* 779 F.Supp. 157, 157 (N.D.Ala.1991); *Hansel v. Public Service Co.,* 778 F.Supp. 1126, 1136–37 (D.Colo.1991); *Mojica v. Gannett Co.,* 779 F.Supp. 94, 95–96 (N.D.Ill.1991).

The second reason for the lack of consensus is that the Supreme Court has provided the lower courts with two conflicting lines of authority for determining the retroactivity of statutes. In *Bowen v. Georgetown Univ. Hosp.,* 488 U.S. 204, 109 S.Ct. 468, 102 L.Ed.2d 493 (1988), the Supreme Court announced that "[r]etroactivity is not favored in the law. Thus, congressional enactments ... will not be construed to have retroactive effect unless their language requires this result." *Id.* at 208, 109 S.Ct. at 471, 102 L.Ed.2d at 500. But in *Bradley v. School Bd.,* 416 U.S. 696, 94 S.Ct. 2006, 40 L.Ed.2d 476 (1974), the Supreme Court "reject[ed] the contention that a change in the law is to be given effect in a pending case only where that is the clear and stated intention of the legislature." *Id.* at 715, 94 S.Ct. at 2018, 40 L.Ed.2d at 490. *Bradley* also approved "the principle that a court is to apply the law in effect at the time it renders its decision, unless doing so would result in manifest injustice or there is stat-

utory direction or legislative history to the contrary." *Id.* at 711, 94 S.Ct. at 2016, 40 L.Ed.2d at 488. Recently, the Supreme Court itself has noted, but declined to resolve, the tension between the presumption of prospectivity reflected in cases like *Bowen* and the presumption of retroactivity reflected in cases like *Bradley*. *Kaiser Aluminum & Chem. Corp. v. Bonjorno*, 494 U.S. 827, 836–39, 110 S.Ct. 1570, 1577–78, 108 L.Ed.2d 842, 853–54 (1990).

The district courts have reached one conclusion or the other concerning the retroactivity of the 1991 Act, according to whether their Circuit prefers the *Bowen* or the *Bradley* line of cases. Our own Seventh Circuit Court of Appeals has recently approved the *Bradley* reasoning. *Federal Deposit Ins. Corp. v. Wright*, 942 F.2d 1089, 1095–97 (7th Cir.1991). Accordingly, all the district courts within the Seventh Circuit to have considered the retroactivity of the 1991 Act have applied a *Bradley* analysis and have concluded that the 1991 Act does apply retroactively to pending cases. *See Graham; Bristow; Guess; Saltarikos v. Charter Mfg. Co.*, 782 F.Supp. 420 (E.D.Wisc.1992); *Mojica*. *But cf. Van Meter*, 778 F.Supp. at 84 (applying *Bowen* because that is the approach approved by the D.C. Circuit); *Hansel*, 778 F.Supp. at 1136 (Tenth Circuit favors *Bowen*).

■■■ Under *Bradley*, approved in *Wright*, this Court must apply a presumption of retroactivity. We then must consider whether either of the two exceptions approved in *Bradley* applies. We have already noted that there is no "statutory direction or legislative history" establishing congressional intent that the 1991 Act apply prospectively. Thus, the first *Bradley* exception does not apply in this case.

As to the second exception, three factors should be considered to determine whether retroactive application of a statute to pending cases would result in manifest injustice: "1) the nature and identity of the parties; 2) the nature of the rights affected; and 3) the impact of the change in the law on pre-existing rights." *Wright*, 942 F.2d at 1096.

The first factor weighs in favor of a finding of manifest injustice where the case is one between private parties and involves a matter of purely private concern. *Id.; In re Busick*, 831 F.2d 745, 748 (7th Cir.1987); *Seniors United for Action v. Ray*, 675 F.2d 186, 189 (8th Cir.1982). In this case, although the parties are private, the civil rights issues involved are of great public concern. Thus, the Court finds that the first factor weighs in this case against a finding of manifest injustice. *Cf. Graham* (first factor weighs against manifest injustice even though only private parties involved, because 1991 Act involves issues of substantial public concern); *Mojica* (same).

The second factor addresses whether application of the new law "would infringe upon or deprive a person of a right that had matured or become unconditional." *Bradley*, 416 U.S. at 720, 94 S.Ct. at 2020, 40 L.Ed.2d at 493. In this case, Reliable never had a vested or unconditional right to engage in racially discriminatory harassment and termination, which were illegal under Title VII at the time of the alleged acts. Moreover, Reliable has no substantial right to a bench trial, whereas the right to a jury trial, even if granted by statute, is entitled to substantial protection. *See Mojica* (citing Fed.R.Civ.P. 38(a)). Finally, we note that this case presents no danger of the plaintiff's being permitted to bypass the administrative procedures that Title VII requires plaintiffs to pursue through the EEOC, since Mr. Poston did exhaust those procedures, and has preserved his Title VII claim.

The third factor "has to do with the nature of the impact of the change in law upon existing rights, or, to state it another way, stems from the possibility that new and unanticipated obligations may be imposed upon a party without notice or an opportunity to be heard." *Bradley*, 416 U.S. at 720, 94 S.Ct. at 2020–21, 40 L.Ed.2d at 493. In this case, as we have said, Reliable was at the time of its conduct prohibited under federal law from discriminating on the basis of race. Retroactive application of the 1991 Act would only af-

fect Mr. Poston's remedies and his ability to employ the jury trial procedure. Accordingly, the Court finds that the third factor weighs against a finding of manifest injustice in the present case.

The Court applies the 1991 Act retroactively to this case because there is no statutory direction or legislative history to the contrary and because doing so does not work a manifest injustice. Accordingly, the Court concludes both that Mr. Poston's claims of racially motivated harassment and termination are cognizable under Section 1981 and that he is entitled to a jury trial on Count II of his amended complaint.[1]

### Conclusion

Having found, for the foregoing reasons, that Section 1981 does not and never has applied to claims of religious discrimination, the Court grants the defendant's motion insofar as it seeks to redress alleged religious discrimination under Section 1981. Furthermore, having found that the 1991 Act applies retroactively to this case, the Court denies the defendant's motion to dismiss the plaintiff's Section 1981 claim of racially motivated harassment and termination. Finally, the Court denies the defendant's motion to strike the plaintiff's jury demand with respect to Count II of his amended complaint.

---

1. Because the Court finds that Mr. Poston may seek redress of his allegedly discriminatory discharge under Section 1981, it does not reach Mr. Poston's argument that the discharge claim is actually one for failure to rehire and not affected by the Supreme Court's decision in *Patterson*.